```
                                                                U.S. DISTRICT COURT
                                                              DISTRICT OF VERMONT
                                                                      FILED
                  PUNITED STATES DISTRICT COURT
                         DISTRICT OF VERMONT        2021 SEP 30  AM 11: 57

                                                                  CLERK
                                                             BY____/tw_____
                                                                DEPUTY CLERK
```

| | |
|---|---|
| GEORGE M. MADISON, II, JOANN B. MADISON AND WILLIAM M. MADISON,<br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant*. | Docket No.<br><br>2:21-cv-231 |

## COMPLAINT

NOW COME Plaintiffs George M. Madison, II, JoAnn B. Madison and William M. Madison, by and through their attorneys, Langrock Sperry & Wool, LLP, and complain against Defendant United States of America as follows:

### Parties

1. Plaintiff George M. Madison, II ("George") is a resident of Shoreham, Vermont.

2. Plaintiff JoAnn B. Madison ("JoAnn") is a resident of Shoreham, Vermont.

3. Plaintiff William M. Madison ("William") is a resident of Shoreham, Vermont.

4. Defendant is the United States of America.

### Jurisdiction, Venue, and Local Law

5. Exclusive jurisdiction lies in this Court because the action is one for personal injury caused by the negligent or wrongful act or omission of an employee of the United States government while acting within the scope of his employment within the meaning of 28 U.S.C. § 1346(b).

Langrock
Sperry
& Wool, LLP

6. Plaintiff timely presented his claim to the United States Department of Agriculture on or about January 25, 2021, and more than six months have passed since presentation of the claim, satisfying the jurisdictional prerequisites of 28 U.S.C. § 2675(a).

7. Venue lies in this Court because the act or omission occurred in the District of Vermont, as provided in 28 U.S.C. § 1402(b).

8. Liability against the United States is premised upon the laws of the State of Vermont.

General Allegations

9. Plaintiffs own a dairy farm in Shoreham, Vermont.

10. George and JoAnn are married; William is their son.

11. In 2015, Plaintiffs had a cement pit installed on their farm for the storage of liquid manure, designed and funded by the National Resources Conservation Service ("NRCS"), a division of the United States Department of Agriculture. Plaintiffs learned that the cement manure pit had inadequate volume for their farming operation and had developed cracks. Because the inadequacy of the cement manure pit was due to NRCS's design flaws, Plaintiffs turned to NRCS to rectify the problem.

12. NRCS's solution was to alter some structural aspects of the cement manure pit design and add an aboveground storage tank, known as a Slurrystore.

13. In August 2018, Plaintiffs received funding from NRCS to construct a Slurrystore and waste transfer system (the "System") between the original cement manure pit and said Slurrystore (the "Project").

14. The System was designed by NRCS civil engineer Tate Jeffrey ("Jeffrey"), an employee of the United States government acting within the scope of his employment.

Langrock
Sperry
& Wool

2

15. NRCS soil conservationist George Tucker ("Tucker"), an employee of the United States government acting within the scope of his employment, served as the Project's compliance officer.

16. The System was built in accordance with, and had to comply with, the specifications contained in NRCS Practice Standard 634 (attached hereto as Exhibit 1).

17. Construction of the Slurrystore and System began in mid-October 2018 and was completed just before Christmas of that year.

18. In April 2019, Plaintiffs used the System to transfer approximately 20 feet of volume from the cement manure pit to the Slurrystore with the pit pump.

19. Having not used the System since April, on September 9, 2019, George and William prepared to agitate liquid manure. They intended to use the cap from the standpipe to cap the discharge pipe. When George attempted to remove the cap, it explosively disengaged from the standpipe.

20. George was severely injured when the pressurized 8-inch ductile iron cap exploded off the System's standpipe and struck his leg, resulting in a compound fracture of his left femur, injuries to his right shoulder and back, and lacerations to his legs, head, and right shoulder. In addition, the explosion knocked George out of his shoes and covered him in manure. William was hit in the face and body by the blast.

21. NRCS Practice Standard 634 required that "the design [of the System] shall consider the safety of humans and animals during construction and operation."

22. NRCS Practice Standard 634 required that the System be designed "in accordance with sound engineering principles, taking into account the waste material properties, management operations, pipe exposure, static and dynamic loads on the pipe,

Langrock
Sperry
& Wool,

working pressure, transfer system pressure rating, required capacity and all applicable design factors."

23. Multiple areas of the System could become pressurized if certain conditions and valve opening and closing sequences are not understood, carefully planned, and executed, including the capped standpipe that led to George and William's injuries.

24. NRCS Practice Standards and general engineering principals required relief valves and pressure gauges to prevent excessive System pressurization.

25. The System design lacked pressure gauges to warn George of the pressurized nature of the capped standpipe, and did not include valves to release the pressure.

26. The System had no warning or danger signs or labels to inform Plaintiffs of the potential for injury if a part of the system became pressurized when the pumps were not operating.

27. NRCS Practice Standard 634 required NRCS employees to "[p]repare an O&M [Operation and Maintenance] Plan for review with the landowner or operator responsible for the application of this practice."

28. Jeffrey and Tucker failed to review the Operation and Maintenance Plan for the System with Plaintiffs.

29. NRCS Practice Standard 634 mandated that NRCS employees "[p]rovide specific instructions in the O&M Plan for proper operation and maintenance of each component of this practice…"

30. Jeffrey and Tucker failed to provide to Plaintiffs specific instructions regarding possible pressurization of the System in the Operation and Maintenance Plan.

31. NRCS Practice Standard 634 also required NRCS employees to "[e]valuate the overall functionality of the waste transfer system for possible malfunctions that could lead to a spill or release of waste material," and "[a]ddress the identified potential failures in the inspection procedures of the operation and maintenance plan."

32. Jeffrey and Tucker failed to evaluate the overall functionality of the System for possible malfunctions that could lead to a spill or release of waste material, and failed to address those identified potential failures in the inspection procedures of the Operation and Maintenance Plan.

33. NRCS Practice Standard 634 mandated that NRCS employees inform operators of the need to "[f]lush pipelines used for transferring waste material with clean water after use, to reduce the risk of gas build up and pipeline explosion."

34. Jeffrey and Tucker failed to inform Plaintiffs of the need to flush pipelines used for transferring waste material with clean water after use, to reduce the risk of gas build up and pipeline explosion.

35. Jeffrey and Tucker failed to include the need to flush the pipelines used for transferring waste material with clean water after use, to reduce the risk of gas build up and pipeline explosion, in the O&M Plan.

36. Jeffrey and Tucker failed to provide training to Plaintiffs regarding the operation and maintenance of the System, as mandated by NRCS Practice Standard 634.

37. Jeffrey and Tucker failed to warn Plaintiffs of the potential danger of excessive pressure buildup within the system.

38. Jeffrey's conduct is attributable to Defendant under a theory of *respondeat superior*.

Langrock
Sperry
& Wool,

5

39. Tucker's conduct is attributable to Defendant under a theory of *respondeat superior*.

## Count I: Negligence

40. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 39 above.

41. Defendant owed Plaintiffs a duty of care.

42. Defendant breached that duty of care by, among other things, negligently designing the System, negligently failing to train Plaintiffs regarding the operation and maintenance of the System, negligently failing to provide Plaintiffs with an adequate Operation and Maintenance Plan for the System, failure to warn of the danger of pressurization of the system, and negligently failing to meet the minimum standards of care as delineated in NRCS Practice Standard 634 and general engineering principals.

43. As a direct and proximate result of Defendant's negligent and wrongful acts and omissions, Plaintiffs suffered personal injury, substantial emotional distress, pain and suffering, and incurred expenses.

## Count II: Negligent Infliction of Emotional Distress (William)

44. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 43 above.

45. William is the son of George.

46. As a result of Defendant's negligence, William witnessed the 8-inch ductile iron cap explode off the System's standpipe and strike George's leg, resulting in a compound fracture of George's left femur, injuries to George's right shoulder and back, and lacerations to George's legs, head, and right shoulder.

47. As a result of Defendant's negligence, William was struck in the face and body by the explosion.

48. As a direct and proximate result of Defendant's negligent and wrongful acts and omissions, William suffered substantial emotional distress.

### Count III: Loss of Consortium (JoAnn)

49. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 48 above.

50. As a direct and proximate result of Defendant's negligent and wrongful acts and omissions, JoAnn has suffered a loss of consortium, company, society, cooperation, and affection of her husband, George.

WHEREFORE, Plaintiffs, individually and collectively, demand judgment against Defendant as follows:

A. For compensatory damages;

B. For costs of suit incurred herein; and,

C. For such other and further relief as the Court deems just and proper.

DATED at Middlebury, Vermont this 28th day of September, 2021.

LANGROCK SPERRY & WOOL, LLP

James W. Swift, Esq.
Vincent J. Todd, Esq.
111 South Pleasant Street
PO Drawer 351
Middlebury, VT  05753-0351
jswift@langrock.com | vtodd@langrock.com
Ph: (802) 388-6356 | Fx: (802) 388-6149

*Attorneys for Plaintiffs George M. Madison, II, JoAnn B. Madison and William M. Madison*